IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JOSEPH PEARN, )<br>)<br>Plaintiff, )<br>)<br>) | CIVIL NO. 3:10CV429 |
| )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Joseph Pearn, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability payments ("DIB"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 11) be DENIED; that Defendant's motion for summary judgment (docket no. 14) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on January 9, 2008, claiming disability due to a hip injury, bipolar disorder, and lumbar spine impairment, with an alleged onset date of January 1, 2007. (R. at 108, 143, 146.) Plaintiff's last date insured was September 30, 2007. (R. at 144.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 53, 63, 74-78.) On April 7, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 20-46.) On June 24, 2009, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act where, based on his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 7-18.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-5.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the

3

time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and

past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.    ANALYSIS

The ALJ found at step one of the analysis that Plaintiff had not engaged in SGA during the period from his alleged onset date of January 1, 2007 through to his date last insured of September 30, 2007. (R. at 12.) At steps two and three, the ALJ found that Plaintiff had the

---

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

severe impairments of cocaine abuse, bipolar disorder, and status post-laminectomy with associated pain, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 12-14.) The ALJ next determined that Plaintiff had the RFC to perform "light work as defined in 20 C.F.R. § 404.1567(b) except that he was limited to unskilled jobs." (R. at 14.) The ALJ further concluded Plaintiff had the RFC "to lift no more than 20 pounds occasionally, lift no more than 10 pounds frequently, stand for six hours in an eight hour workday, and sit for six hours in an eight hour workday." (R. at 16.)

The ALJ then determined at step four of the analysis that Plaintiff was unable to perform any of his past relevant work because of his impairments. (R. at 17.) At step five, after considering Plaintiff's age, education, work experience, and RFC, and after consulting a VE, the ALJ found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. at 17.) Specifically, the ALJ found that Plaintiff could perform occupations such as an inspector, assembly worker, and hand packager. (R. at 18.) Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date and was employable such that he was not entitled to benefits. (R. at 18.)

Plaintiff, now proceeding *pro se*, generally argues that the ALJ's decision is not supported by substantial evidence, and he seeks a finding that he is disabled and entitled to disability benefits. (Pl.'s Comp. at 5.) Defendant argues that Commissioner's final decision is supported by substantial evidence and should therefore be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mot.") at 7-10.) In responding to Plaintiff's argument, the Court will address the ALJ's RFC determination, the ALJ's credibility determinations, and the ALJ's conclusions regarding the treating physicians' and State agency consultants' opinions.

A.   **Relevant Period for Disability Status Determination**

Initially, the ALJ concluded that the relevant period for determining Plaintiff's disability status and eligibility for DIB benefits was from his alleged onset date, January 1, 2007, through to his last date insured, September 30, 2007. (R. at 12.) The September 27, 2007 initial evaluation conducted by Dr. Moyer is the only medical evidence of record prior to the date last insured. (R. at 366-384, 560-561.) The record includes additional medical evidence after that date, but the ALJ assigned such evidence "minimal weight" because it "does not address whether the claimant was disabled prior to September 30, 2007," the date last insured. (R. at 16.)

Plaintiff's Complaint (docket no. 3), Motion for Summary Judgment (docket no. 11), and Response to Defendant's Motion for Summary Judgment (docket no. 17) refer to medical evidence subsequent to the relevant period. Specifically, Plaintiff notes the opinions of Dr. Gibellato and Dr. Lakhani, both concluding that Plaintiff is disabled, as support for his own assertions of disability. (R. at 625-626, 655.) However, both Dr. Gibellato and Dr. Lakhani began treating Plaintiff after the last date Plaintiff was insured. Specifically, Dr. Lakhani noted that his assessment was based on "consistent treatment since November 2007," which is after the conclusion of the relevant period. (R. at 626.) Likewise, Dr. Gibellato did not begin treating Plaintiff until April 23, 2008, over six months after the relevant period. (R. at 655.) Accordingly, the ALJ properly declined to assign such evidence controlling weight because the evidence "does not address whether the claimant was disabled prior to September 30, 2007." (R. at 16.)

B.   **The ALJ's opinion and ultimate conclusion that Plaintiff is not disabled and not entitled to benefits is supported by substantial evidence and application of the correct legal standards.**

Plaintiff does not challenge any specific finding made by the ALJ, but generally contends

that because of his medical conditions, including bipolar disorder and chronic pain, he is totally disabled and cannot perform even light, unskilled work. (Pl.'s Mot. for Summ. J.) He also argues that professional medical opinions support his contention that he is totally disabled. Id. Because Plaintiff appears to contest the ALJ's RFC determination and conclusion that he had the ability to perform occupations that exist in significant numbers, the Court will address whether the ALJ properly determined Plaintiff's RFC and whether the Commissioner satisfied his burden to prove that there are other jobs that exist in significant numbers in the national economy that Plaintiff could perform.

> 1. **The ALJ properly evaluated Plaintiff's credibility and treating physicians' opinions in determining that he retained the RFC to perform light, unskilled work.**
>
>> a. **The ALJ's credibility analysis is supported by substantial evidence.**

At step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1520(a) and 416.929(a). The first step is determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment

reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive of evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

The ALJ found that although the Plaintiff had medically determinable impairments that

could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the determined RFC. (R. at 15.) The ALJ noted that the only medical evidence of record prior to the date last insured was from Plaintiff's single visit to Dr. Moyer. (R. at 15, 366-384, 560-561.) The ALJ found that "there is no objective medical evidence that chronicles the claimant's alleged medical history prior to the date last insured." (R. at 15.) Plaintiff also described a long history of mental illness and psychiatric treatment, but "[t]he September 27, 2007 visit with Dr. Moyer is the only mental health treatment record prior to the date last insured." (R. at 15.) Furthermore, Plaintiff described "significant cocaine abuse that was concurrent with his mental health symptoms" during the September 27, 2007 meeting. (R. at 15.)

Despite his alleged impairments, Plaintiff remained employed until early 2007. (R. at 15, 129.) Plaintiff also continued to "drive, take care of his personal needs, clean, fold laundry, and socialize with his wife and child." (R. at 16.) Plaintiff even went camping with his son-in-law. (R. at 372.) Accordingly, the ALJ concluded that "[Plaintiff's] statements regarding the intensity and severity of his symptoms are not supported by the medical evidence of record that is prior to September 30, 2007. [Plaintiff's] statements are therefore not credible." (R. at 16.) The ALJ concluded that Plaintiff had the residual functional capacity "to lift no more than 20 pounds occasionally, lift no more than 10 pounds frequently, stand for six hours in an eight hour workday, and sit for six hours in an eight hour workday. Claimant is additionally limited to unskilled jobs." (R. at 16.) The ALJ concluded that this RFC was "supported by the medical evidence of record prior to the date last insured, notwithstanding the claimant's less than credible testimony regarding his functional limitations." (R. at 16.) Therefore, because the ALJ applied

10

the correct legal standards in finding Plaintiff not credible, and such decision is supported by substantial evidence, the Court recommends that the ALJ's finding in this regard be affirmed.

      **b.**      **The ALJ's decision regarding the physicians' opinions is supported by substantial evidence.**

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

In finding that Plaintiff retained the RFC to perform light, unskilled work with some limitations, the ALJ relied on the medical evidence of record prior to the date last insured, "notwithstanding the claimant's less than credible testimony regarding his functional limitations." (R. at 16.) The ALJ assigned "minimal weight" to the assessments of Dr. Gibellato and Dr. Lakhani, who both opined that Plaintiff was disabled subsequent to the date last insured, because neither doctor addressed whether Plaintiff was disabled prior to the date last insured, September 30, 2007. (R. at 16, 625-626, 655.) The ALJ also assigned minimal weight to Dr. Moyer's January 1, 2009 assessment that Plaintiff was disabled without consideration of drug use, in light of Dr. Moyer's previous description of significant drug abuse in his April 2008 report. (R. at 16, 560, 620)

State agency consultants concluded Plaintiff was capable of "light work with occasional postural limitations." (R. at 16, 595, 605, 610.) The ALJ assigned such opinions "great weight because it is generally consistent with the medical evidence of record." (R. at 16.) The state agency consultants also opined that "claimant was unable to meet the demands of competitive work on a sustained basis, but this was due to substance abuse. If the claimant discontinued his substance abuse, the residual limitations of his mental impairment would not remain at a disabling level." (R. at 16, 595.) The ALJ assigned the opinion little weight because it addressed evidence subsequent to the date last insured. (R. at 16.)

        i.      **There is substantial evidence supporting the ALJ's conclusion that Dr. Lakhani's opinion and Dr. Gibellato's opinion were not entitled to controlling weight.**

Plaintiff began seeking psychiatric treatment from Dr. Lakhani in November 2007. (R. at 622, 625.) In his March 2009 report, Dr. Lakhani opined that Plaintiff was "totally disabled … since at least early 2007." (R. at 626.) Dr. Lakhani based this assessment on "consistent

treatment since November 2007." (R. at 626.) Dr. Lakhani submitted a second report dated July 15, 2009, but the report, aside from the date, is virtually identical to his March 2009 report. As noted earlier, Plaintiff did not begin treatment with Dr. Lakhani until after the date last insured. Therefore, the ALJ properly that concluded Dr. Lakhani's opinion was not entitled to controlling weight.

Dr. Gibellato began treating Plaintiff April 23, 2008. (R. at 635.) Dr. Gibellato opined in August 2009 that Plaintiff was "totally disabled due to a combination of pain issues and psychiatric issues." (R. at 655.) Again, because Dr. Gibellato did not begin treating Plaintiff until after the date last insured, and because Dr. Gibellato's opinion did not reflect whether he believed Plaintiff was disabled prior to the first date of treatment, the ALJ's conclusion that Dr. Gibellato's opinion was not entitled to controlling weight is supported by substantial evidence.

        ii.        **There is substantial evidence supporting the ALJ's conclusion that Dr. Moyer's January 2009 opinion was not entitled to controlling weight.**

Dr. Moyer initially described Plaintiff's significant drug use in his April 2008 report. (R. at 560, 576.) Later, in January 2009, Dr. Moyer opined that Plaintiff was totally disabled and that "drug and/or alcohol use is not a material cause of this individual's disability." (R. at 620.) However, a notation in both the 2008 and 2009 reports indicates that Dr. Moyer last treated Plaintiff on December 18, 2007. (R. at 620.) Additionally, Dr. Moyer noted in his April 2008 report that his frequency of treating Plaintiff was erratic; he "either did not keep the appointment or he called and canceled." (R. at 560, 576.) Due to the infrequency of treatment and Dr. Moyer's own internal inconsistencies about the effects of Plaintiff's cocaine abuse, the ALJ's conclusion that Dr. Moyer's opinion is not entitled to controlling weight is supported by substantial evidence.

13

### iii. There is substantial evidence supporting the ALJ's conclusion that the opinions of the State agency consultants were not entitled to controlling weight.

A state agency consultant opined that Plaintiff was disabled as a result of a substance abuse problem. (R. at 595.) The ALJ assigned this opinion little weight because it addressed evidence subsequent to the date last insured. (R. at 16.) The state agency consultant's opinion was issued in June 2008, and it included an examination of medical evidence subsequent to the relevant period. (R. at 593-595.) Subsequent opinions from state agency consultants confirmed the June 2008 findings, but again, these opinions were based on evidence after the relevant period. (R. at 603-610.) Therefore, substantial evidence supports the ALJ's decision to not assign these opinions controlling weight.

### 2. The ALJ posed a valid hypothetical to the VE which included all of Plaintiff's abilities and limitations and properly concluded that other work exists in significant numbers in the economy that Plaintiff could perform.

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. As noted earlier, when a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id.

After finding that Plaintiff's RFC precluded him from performing his past relevant work

as a carpenter, the ALJ went on to conclude that other work existed in significant numbers in the national economy that Plaintiff was capable of performing. (R. at 17-18.) In reaching this decision, the ALJ posed hypotheticals to the VE. (R. at 49-51.) First, the ALJ asked the VE if there were any other jobs that Plaintiff could perform with his limitations. (R. at 49.) The ALJ described these limitations as "able to stand and walk no more than two hours in an eight hour day, can sit six to eight hours in an eight hour day but needs to be able to change positions at will, needs a cane for ambulation." (R. at 49.) The VE responded that "there certainly are sedentary jobs, unskilled sedentary jobs that would allow him to change positions occasionally. They would not, however, allow him to do it at will…." (R. at 49-50.) The ALJ adjusted his hypothetical to allow the Plaintiff to change positions every thirty minutes, to which the VE responded "I think they would allow for him to change positions every 30 minutes." (R. at 50.) The VE identified this type of work as work as an inspector, assembly worker, or hand packager. (R. at 50.) The ALJ posed a final hypothetical to the VE involving a "sit/stand option." (R. at 50.) The ALJ asked "if, at the end of the 30 minutes, he needed to actually lie down for five or 10 minutes, would he be able to do those jobs?" (R. at 50.) The VE responded such jobs "would not allow for that…he would need to be able to remain at the work station and be productively engaged." (R. at 50.)

Plaintiff, relying on a report from Dr. Lakhani and Dr. Gibellato, asked the VE whether an individual who was absent from work three or more days a month due to physical pain and psychiatric symptoms would be able to perform any jobs in the national economy. (R. at 51.) The VE responded that such an individual would not be able to perform any jobs in the national economy. (R. at 51.) Plaintiff next asked the VE if any work existed in the national economy for an individual who "needed to, when sitting down, actually needed to get up every 20 minutes

for about a 10 minute break, taking him off task?" (R. at 51-52) The VE responded that such activity would not allow for the "sustained activity that competitive work" requires. (R. at 52.)

The ALJ concluded that the VE's testimony was consistent with information contained in the Directory of Occupational Titles. (R. at 18.) Therefore, where the ALJ discounted the opinions of Plaintiff's treating physician for the reasons discussed herein, the ALJ properly relied on the VE's testimony in determining that other work existed in significant numbers in the national economy that Plaintiff was capable of performing. Substantial evidence also supports the ALJ's decision to reject the hypotheticals posed by Plaintiff, because these hypotheticals were based on medical evidence occurring after the relevant period. Accordingly, the ALJ's ultimate conclusion that Plaintiff is not disabled is supported by substantial evidence and application of the correct legal standards and should be affirmed.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 11) be DENIED; Defendant's motion for summary judgment (docket no. 14) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure**

**shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
DENNIS W. DOHNAL
UNITED STATES MAGISTRATE JUDGE

Date: April 7, 2011
Richmond, Virginia